IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 08-007ML |
| | ) | |
| CHRISTOPHER M. THIBODEAU | ) | |

GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS
NOTICES OF AN UPWARD DEPARTURE AND OF A VARIANCE

The government previously provided notices that it intends to request an upward departure and a variance from the advisory Sentencing Guidelines range as determined by the United States Probation Officer. This memorandum of law is filed in support of those notices.

The guidelines calculations:

On February 27, 2008, Defendant Christopher M. Thibodeau (the defendant or Thibodeau) entered a plea of guilty to two counts of a criminal Information charging him with conspiracy to commit bank robbery in violation of 18 U.S.C. § 371 and armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d).[1] The facts of the offense were fairly stated at the change of plea hearing and are fairly stated in the presentence investigation report (PSR). The Court is not bound by the plea agreement. The government may recommend a sentence up to the statutory maximum which is thirty years imprisonment were the sentences to be imposed consecutively.

In computing the advisory sentencing range, the probation officer correctly determined

[1] At the same time, the defendant also admitted to violating the terms of his supervised release imposed in Cr. No. 94-024L

that the defendant had a total offense level of 23 and a total of six criminal history points. Six criminal history points yields a Criminal History Category III. The guideline range is 57 to 71 months imprisonment.

The defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history and the likelihood that the defendant will commit other crimes. It is the position of the government that an upward departure and variance from the current guideline range is warranted.

Argument

The policy statement found at U.S.S.G. § 4A1.3 states, in part, as follows:

(a) UPWARD DEPARTURES. -

> (1) STANDARD FOR UPWARD DEPARTURE. - If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.
>
> (2) TYPES OF INFORMATION FORMING THE BASIS FOR UPWARD DEPARTURE.- The information described in subsection (a) may include information concerning the following:
>
> > (A) Prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal offenses).
>
> . . . . .
>
> (4) DETERMINATION OF EXTENT OF UPWARD DEPARTURE. -
>
> > (A) IN GENERAL. - Except as provided in subdivision (B), the court shall determine the extent of a departure under this subsection by using, as a reference, the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's.

> (B) UPWARD DEPARTURES FROM CATEGORY VI. - In a case in which the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.

Guidelines departures under § 4A1.3 "are more narrowly cabined" than other departures. The Court moves "from one criminal history category to another, thereby entailing *horizontal* shifts in position on the [Sentencing Table] grid." United States v. Aymelek, 926 F.2d 64, 70 (1st Cir. 1991). In Aymelek, an illegal re-entry prosecution, the District Court grounded a § 4A1.3 departure on seven uncounted convictions, some of which were for serious matters such as assault with intent to rob, unlawful possession of a firearm after a felony conviction, and unlawful sale of a firearm. In affirming, the Court of Appeals stated 'We therefore read section 4A1.3 as providing the opportunity to ground a departure on a defendant's remote convictions when and if those convictions evince some significantly unusual penchant for serious criminality, sufficient to remove the offender from the mine-run of other offenders." Id. at 73.

The defendant's PSR indicates that through age forty, he has been arrested eighteen times as an adult, including the instant offense. Of these eighteen arrests, thirteen have resulted in convictions. Of his thirteen convictions, at least ten constituted felony convictions. As the following analysis demonstrates, the defendant's criminal history is understated. He is a recidivist and is likely to recidivate. His criminal journey can be summarized as follows:

| Age | Arrest Date | Conviction Date | Offense |
|---|---|---|---|
| 18 | 10/11/1985 | 04/07/1987 | Attempted larceny/Conspiracy |
| 18 | 04/23/1986 | 06/24/1986 | Attempted larceny |
| 19 | 01/09/1987 | 01/20/1987 | Shoplifting (M) |
| 19 | 02/24/1987 | 04/07/1987 | Receiving stolen goods over $500 |
| 20 | 08/03/1987 | 07/13/1995 | Larceny of vehicle/Burglary tools (?) |
| 20 | 05/16/1988 | 06/01/1988 | Possession of stolen motor vehicle |
| 22 | 09/18/1989 | 10/06/1989 | Fraudulent use of credit cards |
| 22 | 10/04/1989 | 10/19/1989 | Larceny over $500 |
| 22 | 10/08/1989 | 12/06/1989 | Forgery/Possession of stolen motor vehicle |
| 22 | 03/23/1990 | 04/25/1990 | Possession of stolen motor vehicle |
| 25 | 09/18/1992 | 12/08/1992 | Possession of stolen motor vehicle |
| 25 | 01/08/1993 | 1/08/1993 | Operating on suspended license (M) |
| 26 | 04/07/1994 | 03/30/1995 | Bank robbery |

Only one of the defendant's ten felony convictions, the prior federal prosecution for bank robbery found at PSR ¶ 45, qualified for criminal history points. None of the nine remaining felony convictions qualified for criminal history points due to their age.[2]

Beginning with age 18, in nearly every year of the defendant's adult life, he was arrested for at least one felony offense. The only exceptions are for ages 21, 23, 24, and ages 27 through 39, and those exceptions can be readily explained. At age 20, on May 16, 1988, about six weeks

---

[2] Under U.S.S.G. § 4A1.1, sentences imposed more than ten years, and under certain circumstances more than fifteen years, prior to the commencement of the instant offense are not counted in determining total criminal history points.

prior to his twenty-first birthday, the defendant was arrested for felony possession of a stolen motor vehicle. He was sentenced on June 1, 1988 to one year in prison. At age 22, on March 23, 1990, the defendant was arrested for possession of a stolen motor vehicle. He was sentenced on April 25, 1990 to two years in prison. From age 26 through age 39, he was either detained or serving a term of imprisonment for bank robbery.[3] The instant offense was committed by the defendant two days shy of his fortieth birthday.

Under a guidelines analysis, the government urges that the Court upwardly depart to a Criminal History Category VI. The defendant is a recidivist. It is a virtual certainty that he will commit one or more felony offenses upon release from whatever sentence the Court imposes in the instant case. The government recognizes that the uncounted convictions of this defendant are not the same type of serious uncounted offenses present in Aymelek. However, the case against defendant Thibodeau is distinguishable. The number of uncounted convictions is greater. Though the frequency of felony offenses in Aymelek is not mentioned, Thibodeau has a demonstrated history of committing at least one felony offense each year he is not incarcerated. Further, the seriousness of Thibodeau's offenses has increased over time, his last two offenses being armed bank robbery.

If Thibodeau's prior felony offenses had been counted, he would have received fifteen criminal history points in addition to the six actually assessed for a total of twenty-one criminal history points.[4] Under these circumstances, an upward departure to Criminal History Category

---

[3] The defendant's juvenile adjudications are similar, being arrested and adjudicated eight times between ages twelve and seventeen.

[4] The points would have been assessed by PSR paragraph as follows: ¶33 - 2; ¶34-1; ¶36-2; ¶38-2; ¶39-1; ¶40-1; ¶41-2; ¶42-3; ¶43-1; ¶45-3+3.

VI is justified, with a resulting guideline range of 92-115 months imprisonment. A sentence within this range amounts to a 61% to 62% increase over the present range of 57-71 months. See e.g., United States v. Chapman, 241 F.3d 57, 65 (1st Cir. 2001) (collecting cases quantifying the percentage increase of the actual sentence over the guideline range). A guideline sentence at the top of the range, 115 months imprisonment, is appropriate.

Whether or not the Court accepts the guidelines analysis reasoning of the government, the Court also has the authority to impose a sentence which constitutes a variance from the guideline range. The Supreme Court has directed that the District Courts calculate the guideline range, allow the parties to present argument as to the appropriate sentence, consider the § 3553(a) factors, and adequately explain the chosen sentence - including an explanation for any deviation from the guideline range. Gall v. United States, 128 S. Ct. 586, 597 (2007). See also, United States v. Politano, 522 F.3d 69, 72 (1st Cir. 2008); United States v. Solis-Bermudez, 501 F.3d 882, 884 (8th Cir. 2007) ( District Courts perform a three-step analysis: 1)calculate the advisory guideline range based upon offense level and criminal history category; 2) consider whether traditional guideline departures apply; and 3) consider the other factors set forth in 18 U.S.C. § 3553(a) in deciding whether to impose a guideline or non-guideline sentence).

The government believes that the probation officer has correctly computed the applicable guideline range. To the government's knowledge, no objections have been filed by the defendant. Further, whether or not the Court accepts the government's departure reasoning as set forth above, neither the probation officer nor the government have identified any other basis for departure beyond U.S.S.G. § 4A1.3. This leaves the analysis of the § 3553(a) factors, some of which are as follows:

**The nature and circumstances of the offense.** The circumstances include a broad-daylight bank robbery; a bank branch staffed by only two women tellers; Thibodeau armed with a "Club"; a co-defendant armed with what appeared to be a handgun[5]; the handgun pointed at one bank teller; the use of a stolen vehicle now rendered essentially valueless to the owner; and a plan that was at least two days in the making.

**The history and characteristics of the defendant.** The government incorporates its above analysis of the defendant's criminal history, most particularly the frequency of felony offenses whenever the defendant is not institutionalized. Further, the defendant's most recent conviction (1995) was for another armed bank robbery which also included a conviction for violating 18 U.S.C. § 924(c). Further, the defendant lasted only 46 days of a five-year term of supervised release before committing the instant offense.

**The seriousness of the offense.** The phrase "armed bank robbery" speaks for itself. There are only a small handful of offenses more serious than an armed bank robbery in terms of danger to members of the public.

**Adequate deterrence.** A sentence above the advisory guideline range is necessary to deter others from committing similar offenses. By its vary nature, an armed bank robbery is life-threatening to those employees and customers inside the bank, to those persons in the immediate vicinity of the bank, and to those persons in the immediate vicinity of any resulting police chase. A sentence that may force others to "think twice" before engaging in similar criminal conduct is necessary. Further, it is obvious that lenient sentences imposed upon Thibodeau have not

---

[5] No handgun was recovered. In the woods where Thibodeau and Evans were arrested, officers found a clip for an air pistol. It is unknown whether this air pistol clip is connected to the robbery.

worked in the past. Prior to the defendant's 1995 fifteen year federal sentence, the courts treated the defendant with great leniency. The defendant's ten prior felony convictions, in terms of the sentence imposed, netted him a total of only three years, ten months, and one day imprisonment.

**Protection of the public from further crimes of the defendant.** With the exception of the defendant's suspended license conviction, all of the defendant's convictions have involved real victims, whether those victims be banks, bank customers, bank employees, owners of vehicles stolen, businesses from which goods were shoplifted, or persons whose credit cards were wrongfully used. Based upon Thibodeau's past, there is every reason to believe that he will commit future crimes and that those crimes will again impact real victims.

**Educational and/or vocational training.** The defendant served a sentence of more than twelve years in federal correctional institutions. Whatever opportunities he availed himself of during this period appear to have had no effect. There is no reason to believe that a guideline sentence in this matter would have any rehabilitative effect.

An upward variance from the advisory guideline range is justified. A sentence of 115 months imprisonment is both reasonable and appropriate.[6]

Respectfully submitted,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/ Kenneth P. Madden
Kenneth P. Madden
Assistant U. S. Attorney
RI Bar No. 1680
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)
kenneth.madden@usdoj.gov

Arthur Kimball-Stanley
University of Connecticut Law School

[6] In Cr. No. 94-024, the government intends to recommend a sentence of thirty-six months imprisonment consecutive to the term of imprisonment imposed in Cr. No. 08-007.

CERTIFICATION

I hereby certify that on the 16th day of June, 2008, I electronically filed and served the Within Government's Memorandum In Support Of It's Notices Of An Upward Departure And Of A Variance, to:

John M. Cicilline, Esq.
Law Offices
387 Atwells Avenue
Providence, RI 02909

/s/ Kenneth P. Madden
Kenneth P. Madden
Assistant U. S. Attorney
RI Bar No. 1680
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)
kenneth.madden@usdoj.gov